IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

CHRISTOPHER D. PATTERSON                                              PLAINTIFF

v.                         Civil No. 09-2045

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                        DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Christopher Patterson, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.   Procedural Background**

The plaintiff filed his applications for DIB and SSI on July 21, 2006, alleging an onset date of May 24, 2005, due to bipolar disorder; rotator cuff, left arm, and left knee pain due to injury; light sensitivity, migraine headaches, obesity, and borderline to low average intellectual functioning. (Tr. 8-9, 85-94, 110, 118-127, 142, 146, 149). His applications were initially denied and that denial was upheld upon reconsideration. (Tr. 56-65, 67-70). Plaintiff then made a request for a hearing by an Administrative Law Judge (ALJ). An administrative hearing was held on February 7, 2008. (Tr. 5-32). Plaintiff was present and represented by counsel.

At this time, plaintiff was 27 years of age and possessed a high school education. (Tr. 8, 40-52). He had past relevant work experience as a dairy stocker. (Tr. 8, 111).

On October 1, 2008, the ALJ found that plaintiff's personality disorder, fracture of the upper extremity, and knee injury were severe impairments, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 45-46). After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity to perform light work that does not involve climbing ladders/ scaffolds or crawling; requires frequent but not repetitive stair/ramp climbing, balancing, kneeling, crouching, and stooping; and, requires frequent but not repetitive grasping and fingering with the non-dominant hand. Mentally, the ALJ concluded that plaintiff was moderately limited in his ability to make judgments or simple work-related decisions; understand, remember, and carry out complex instructions; interact appropriately with supervisors, co-worker, and the public; and, to respond appropriately to usual work situations and routine work changes. (Tr. 47). With the assistance of a vocational expert, the ALJ found plaintiff could perform work as a shirt presser, laundry and dry cleaning worker, and inspector. (Tr. 51).

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on March 25, 2009. (Tr.412-415). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (Docs.10, 11).

## II. **Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.  Discussion

After reviewing the medical evidence of record, the undersigned finds that the ALJ's RFC is not supported by substantial evidence. Of particular concern in the ALJ's mental and physical RFC assessment. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."

4

*Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

On November 2, 2006, plaintiff underwent a general physical examination with Dr. William Swindell. (Tr 246-254). Plaintiff complained of knee injuries, major arm surgery, depression, anxiety, shoulder pain, back pain, heel spurs, digestive problems, hip pain, and sensitivity to light. However, he reported his knees and shoulder to be his biggest problem areas. Plaintiff stated that his right knee was worse than his left and had given way on him, causing him to fall. This made it difficult for him to climb or descend stairs. He also reported limited movement of his left arm and pain near the scapula in the right arm. Records indicate that plaintiff had fallen in October 1993 and suffered an open fracture of the two bones of the left forearm with overriding of the fragments and displacement. (Tr. 226-231). He underwent surgery with debridement, irrigation, and open reduction with fixation with pins. As a result, plaintiff complained of chronic wrist discomfort. An examination revealed a limited range of motion in plaintiff's left wrist and right knee. He had only 80% grip strength in his left hand and could not touch his fingertips to his palm with the left hand. Dr. Swindell diagnosed plaintiff with a possible internal derangement of the right knee, left shoulder pain with bursitis, chronic constipation, a history of ORIF fracture of the right radius and ulna with limited flexion and extension of the left wrist, and heel spurs. He then concluded that plaintiff would have moderate limitations walking, standing, sitting, lifting, carrying, handling, fingering, seeing, hearing, and speaking. However, he was not asked to complete a physical RFC assessment. Dr. Swindell also

5

noted that plaintiff might have torn cartilage or a torn ligament in his left knee. (Tr. 246-254).

The only physical RFC assessment contained in the file was completed by Dr. Bill Payne. (Tr. 260-267). He concluded that plaintiff could perform light work with limitations in his upper extremities. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence). However, neither he nor the ALJ fully account for Dr. Swindell's assessment that plaintiff might have a torn ligament or cartilage in his knee. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 730 (8th Cir. 2003) (holding that a treating physician's opinion is generally entitled to substantial weight). Because this type of impairment would significantly impact plaintiff's ability to perform work-related activities, namely standing, walking, climbing, crouching, kneeling, and stooping, we believe this should have been investigated further. At the very least, Dr. Swindell should have been asked to complete a physical RFC assessment to estimate plaintiff's work-related limitations. As this was not done, we do not find substantial evidence to support the ALJ's RFC assessment. Remand is necessary to allow the ALJ to develop the record further concerning plaintiff's possible torn cartilage/ligament in his knee.

Likewise, we take issue with the ALJ's mental RFC assessment. On October 31, 2006, plaintiff underwent a mental status examination and evaluation of adaptive functioning with Dr. Robert Spray, Jr. (Tr. 240-245). Plaintiff was cooperative and polite, seemed fidgety and anxious, exhibited spontaneous speech, and reported hearing voices calling his name at night (what he called "night talk"). His affect was appropriate and variable. Plaintiff became tearful as he spoke of previous thoughts of self harm. He also reported problems with anger

6

management, OCD, moodiness, and depression over not having enough money. Plaintiff stated that he had been placed on Prozac after his Mom married his step-father, but reported no current medications. He also complained of problems with short-term immediate memory, chronic difficulty with concentration and attention, trouble hearing, and difficulty sitting still. Dr. Spray diagnosed plaintiff with ADHD, bipolar disorder not otherwise specified vs. dysthymia with impulse control disorder, episodic cannabis use, borderline to low average intellectual functioning with an emotional overlay, and obsessive compulsive and hypervigilant personality features. He concluded that plaintiff's condition was not likely to improve significantly within the next twelve months. Dr. Spray also noted that plaintiff's concentration was moderately to severely impaired. (Tr. 240-245).

On March 17, 2008, plaintiff underwent a mental diagnostic and personality evaluation with Dr. Patricia Walz. (Tr. 312-317). Her assessment indicates that she had reviewed Dr. Spray's evaluation. Plaintiff stated that he had applied for disability due to many physical problems and "a few mental problems as well." He stated that he had played sports and suffered many injuries. Plaintiff also relayed his history of physical abuse at the hands of his stepfather and emotional abuse by his mother. When asked to describe his mental problems, plaintiff stated that he had a lot of anger, was very anxious, was depressed, and experienced problems sleeping. Plaintiff reported no psychiatric hospitalizations, but did state that he had been going to WACG since 2006. He reported being knocked unconscious while playing football at age seven, but only for a couple of minutes with no sequelae. Plaintiff was wearing a neck brace, which he had been prescribed for a hairline fracture over his top vertebrae. He also had a cane he reported using "once in a while."

Plaintiff's mood was euthymic, his affect was consistent with his mood, his speech was clear and intelligible, his thought processes were logical and goal oriented, and his thought content was notable for suicidal and homicidal thinking. (Tr. 312-317). His social skills were adequate, his IQ was estimated to be in the low average range, and he seemed to have trouble with a task of sustained attention. Plaintiff also had minimal frustration tolerance. He admitted to hearing "things sometimes," stating that he heard a loud banging sound while sleeping. When his medicine was "kicking in," plaintiff also reported hearing whispers. Dr. Walz diagnosed him with major depression and dependent traits. She assessed him with a GAF of 50. (Tr. 312-317).

Dr. Walz also completed a mental RFC assessment. (Tr. 318-320). She concluded that plaintiff's anxiety and depression resulted in moderate limitations with regard to plaintiff's ability to understand, remember, and carry out complex instructions; make judgments on complex work-related decisions; interact appropriately with the public; interact appropriately with supervisors; interact appropriately with co-workers; and, respond appropriately to usual work situations and to changes in a routine work setting. Dr. Walz noted that plaintiff would miss work due to his depression and pain and would experience difficulty getting along with others due to his irritability. She also stated that plaintiff had denied using drugs or alcohol. (Tr. 318-320).

On April 30, 2008, Dr. Walz completed a second, more informative mental RFC. (Tr. 322-324). She indicated that plaintiff was markedly limited with regard to completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods. Further, Dr. Walz found plaintiff to have moderate limitations in the following areas:

8

understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule; maintaining regular attendance; being punctual within customary tolerances; working in coordination with or proximity to others without being distracted by them; interacting appropriately with the general public; accepting instructions and responding appropriately to criticism from supervisors; getting along with co-workers or peers without distracting them or exhibiting behavior extremes; maintaining socially appropriate behavior; adhering to basic standards of neatness and cleanliness; responding appropriately to changes in the work setting; and, setting realistic goals or making plans independent of others. She stated that plaintiff was irritable secondary to depression, resulting in poor frustration tolerance. His concentration and attention was also impaired secondary to depression. (Tr. 322-324).

Because Dr. Walz's second assessment stated that plaintiff was markedly limited with regard to completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods, the ALJ concluded that this was inconsistent with her prior opinion finding plaintiff to have only moderate limitations in all areas. We note, however, that the second form included categories not included in the form submitted to Dr. Walz by the Administration. The second form was much more thorough, asking more in depth questions than the first. *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) (holding that the ALJ is not free to ignore medical evidence, rather must consider the whole record). Thus, it is clear to the undersigned that Dr. Walz was not asked to comment on plaintiff's ability in this area of

functioning when completing the first form. Therefore, her opinion should not have been dismissed by the ALJ.

We also note, although not asked to complete a mental RFC assessment, Dr. Spray also concluded that plaintiff had moderate to severe concentration difficulties. Therefore, we believe remand is also necessary to allow the ALJ to reconsider plaintiff's mental limitations.

**IV.    Conclusion**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 13th day of April 2010.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE